IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JILL MENDYGRAL,

    *Plaintiff*,

    v.

MAYOR AND CITY COUNCIL OF
OCEAN CITY, *et al.*.

    *Defendants*.

Civil Action No. ELH-21-1381

**MEMORANDUM OPINION**

In this tort case, plaintiff Jill Mendygral filed suit against the Mayor and City Council of Ocean City ("Ocean City")[1] and 85 N. Sunny, LLC ("Sunny"), to recover damages for an injury she sustained in 2018, while on the beach in Ocean City, Maryland.[2] ECF 1 (the "Complaint"); ECF 7 (the "Amended Complaint"). In particular, on the first day of her summer vacation, plaintiff was injured when a beach umbrella owned by Sunny became dislodged, flew into the air, and then stabbed plaintiff in the chest. Plaintiff underwent emergency surgery to dislodge the umbrella.

Count I of the Amended Complaint, lodged against Ocean City, alleges "Respondeat Superior/Negligence/Premises Liability." *Id.* ¶¶ 20-26. In Count II, lodged against Sunny, plaintiff alleges "Respondeat Superior/Negligence/Premises Liability." *Id.* ¶¶ 27-32. Plaintiff seeks "damages in excesses" of $75,000 against both Ocean City and Sunny each, "individually and/or jointly and severally." *Id.* ¶¶ 26, 32.

---

[1] Plaintiff's original Complaint identified Ocean City as the "Town of Ocean City." ECF 1 at 1. Ocean City moved to dismiss, and indicated that the jurisdiction's legal name is "Mayor and City Council of Ocean City." *See* ECF 6 at 1 n.1.

[2] Mendygral is domiciled in Pennsylvania. ECF 7, ¶ 1. Sunny is an LLC with one member, who is a citizen of Maryland. ECF 13 (Local Rule 103.3 Disclosure Statement) at 2. Jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332.

Sunny has answered the Amended Complaint.  ECF 9.  But, Ocean City has moved to dismiss the claims against it, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  ECF 15.  The motion is supported by a memorandum.  ECF 15-1 (collectively, the "Motion").  Plaintiff opposes the Motion (ECF 16), supported by a memorandum.  ECF 16-1 (collectively, the "Opposition").  And, Ocean City has replied.  ECF 17 (the "Reply").

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion, without prejudice.

## I. Factual Background[3]

Plaintiff is an adult resident of Pennsylvania.  ECF 7, ¶ 1.  On or about July 22, 2018, she was lawfully on the beach in Ocean City, in the vicinity of 54th Street, "enjoying her first day of vacation."  *Id*. ¶ 10; *see id*. ¶¶ 8, 9.  The Complaint states that "a wind advisory" was in effect at the time.  *Id*. ¶¶ 24(e); 30(e).

According to plaintiff, "suddenly and without warning, a beach umbrella . . . became dislodged from the sand and [flew] into the air, violently stabling Plaintiff in her chest."  *Id*. ¶ 10.  Sunny owned the umbrella, and Sunny was responsible for its care, supervision, and maintenance.  *Id*. ¶¶ 4, 11.  In addition, plaintiff alleges that both defendants were "responsible for the care of the beach," individually and through their agents, servants, and/or employees, "including adequately monitoring the forecast and wind gusts and folding umbrellas in the downward position so they are unable to become dislodged from the sand, ensuring the safety of those lawfully using the

---

[3] The factual allegations in this case are relatively straightforward. As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the suit. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).

Throughout the Memorandum Opinion, the Court cites to the electronic pagination. But, the electronic pagination does not always correspond to the page number imprinted on the particular submission.

beach, including Plaintiff." *Id*. ¶ 13.  Further, she asserts that defendants knew of the dangerous condition and failed to warn plaintiff and others, invitees, of the hazardous condition on the beach. *Id*. ¶¶ 24, 30.

Following the occurrence, plaintiff was rushed to the hospital via helicopter, "where she underwent emergency surgery to remove the umbrella that had stabbed her and became lodged in her chest." *Id*. ¶ 11.  Plaintiff contends that, "[a]s a direct and proximate result" of the "negligence, carelessness, recklessness, and/or willful acts and omissions" of the defendants, she has suffered multiple "severe and permanent injuries." *Id*. ¶ 15; *see also id*. ¶¶ 16-19.  These include a chest wound, resulting in permanent disfigurement of plaintiff's chest; radiating back pain; gross hematuria; pelvic pain; recurring numbness in her right arm and hand; fevers; adjustment disorder; anxiety; and depression.  *Id*. ¶¶ 15, 19.

Count I alleges that Ocean City, individually and by and through its agents, servants, and/or employees, acting within the scope of their employment, owed a duty to plaintiff as a member of the public using a beach for recreational purposes.  *Id*. ¶ 21.[4]  Further, she asserts that Ocean City, individually or vicariously, breached this duty by "willfully failing to guard and/or warn against" a number of dangerous conditions, uses, and activities related to the beach, and this "negligence and willful misconduct" was the direct and proximate cause of plaintiff's injuries.  *Id*. ¶¶ 22, 23.

The Amended Complaint enumerates a series of alleged examples of Ocean City's misconduct.  *Id*. ¶ 24.  Distilled to their essence, plaintiff alleges that Ocean City knew that a "dangerous and hazardous condition" existed by leaving beach umbrellas opened on the beach during unsafe wind conditions, and failed to warn about the risk or take necessary precautions.  *Id*. In addition, plaintiff alleges that Ocean City "[w]illfully fail[ed] to inspect the beach while a wind

---

[4] Plaintiff does not specify the particular duty.

advisory was in effect." *Id.* ¶ 24(e).  Count II levies a similar set of accusations against Sunny. *Id.* ¶¶ 27-32.

Additional facts are included, *infra*.

## II.  Standard of Review

In their briefing, the parties primarily focus on the Rule 12(b)(6) standard for failure to state a claim.  Ocean City has also moved to dismiss pursuant to Rule 12(b)(1), relating to dismissal for lack of subject matter jurisdiction, based on governmental immunity.  *See* ECF 15-1 at 2 n.1.

To be sure, the Fourth Circuit and a number of judges in this District have held that assertions of sovereign immunity are properly addressed under Rule 12(b)(1).  But, sovereign immunity is not at issue here.[5]  Therefore, I shall focus on Rule 12(b)(6).

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  That rule provides that a complaint must contain a "short

---

[5] The cases cited by Ocean City, although sometimes using the phrase "governmental immunity," primarily concern sovereign immunity, not local governmental immunity. *See Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001); *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995); *Brown v. Wash. Metro. Area Transit Auth.*, DKC-05-0052, 2005 WL 1941630, at *1 (D. Md. Aug. 12, 2005).

and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam).  But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief.  *Iqbal*, 556 U.S. at 678.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly

appear[ ] *on the face of the complaint.*'"   *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*)

(quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'"   *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Among several exceptions to this principle, a court resolving a motion to dismiss under Rule 12(b)(6) "may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'"   *Goldfarb v. Mayor and City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).   However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

### III. Discussion

Ocean City advances two principal arguments in support of dismissal.  First, Ocean City contends that it owed no duty of care to plaintiff under Md. Code (2018 Repl. Vol., 2021 Supp.), § 5-1101 *et seq*. of the Natural Resources Article ("N.R.").  ECF 15-1 at 3-6.  This statute is known as the "Recreational Use Statute" ("MRUS"), although the parties do not refer to it by that name. Second, it contends that plaintiff's claim is barred by the doctrine of governmental immunity.  *Id*. at 6-8.

In response, plaintiff contends that she has adequately alleged facts sufficient to fall within the "willful or malicious" exception to the MRUS.  ECF 16-1.  Further, she argues, *id.*, that her allegation of vicarious liability is sufficient to overcome governmental immunity under the Local Government Torts Claim Act ("LGTCA"), Md. Code (2020 Repl. Vol., 2021 Supp.), §§ 5-301 *et seq.* of the Courts and Judicial Proceedings Article ("C.J.").  In its reply, Ocean City contends that plaintiff's arguments are legally incorrect.

I begin with the LGTCA.  The Court "must look to substantive state law . . . in determining the nature and scope of a claimed immunity."  *Gray-Hopkins v. Prince George's Cty.*, 309 F.3d 224, 231 (4th Cir. 2002).

## A.  Governmental Immunity

As noted, Ocean City argues that "governmental immunity" shields it from plaintiff's claim.  ECF 15-1 at 6-8, 10.  Plaintiff responds that, under the LGTCA, "a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government."  C.J. § 5–303(b)(1).  And, she maintains that Ocean City is vicariously liable for the acts of its "agents, servants, and/or employees, acting within and in furtherance of the scope of their employment."  ECF 16-1 at 6 (citing ECF 7, ¶¶ 21-24, 26).

But, plaintiff does not allege any facts concerning the relationship between Ocean City and Sunny.  Moreover, she clearly alleges that it was Sunny that "owned" the beach umbrella and "was responsible for [its] care, supervision and maintenance . . . ."  ECF 7, ¶ 11.  And, she does not allege that Sunny was an employee or agent of Ocean City.

Sovereign immunity "does not immunize political subdivisions of the state, such as municipalities and counties, even though such entities might exercise a 'slice of state power.'"

*Ram Ditta by and through Ram Ditta v. Md. Nat. Capital Park & Planning Comm'n*, 822 F.2d 456, 457 (4th Cir. 1987) (quoting *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979)).  But, a municipality, such as Ocean City, is entitled to governmental immunity in negligence actions when the conduct on which the suit is based is governmental, not proprietary.  *Gray-Hopkins*, 309 F.3d at 234 ("Under Maryland law, a county 'is immune from liability for tortious conduct committed while the entity was acting in a governmental capacity.'") (citation omitted); *Devi v. Prince George's Cty.*, DKC-16-3790, 2017 WL 3592452, at *2 (D. Md. Aug. 21, 2017); *see DiPino v. Davis*, 354 Md. 18, 47, 729 A.2d 354, 369-70 (1999) (stating that a municipality is "immune from common law tort suits when engaged in governmental, as opposed to proprietary, acts"); *Nam v.. Montgomery Cty.*, 127 Md. App. 172, 182, 732 A.2d 356, 362 (1999)) ("When the state gives a city or county part of its police power to exercise, the city or county to that extent is the state.").

Title 5, Subtitle 3 of the Courts and Judicial Proceedings Article of the Maryland Code is captioned "Local Government Tort Claims Act."  C.J. § 5–303(b)(1) provides that "a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government."  Section 5–303(b)(2) prohibits a local government from "assert[ing] governmental or sovereign immunity to avoid the duty to defend or indemnify an employee" established in C.J. § 5–303(b)(1). C.J. § 5–303(b)(2).  *See Balt. Police Dep't v. Cherkes*, 140 Md, App. 282, 318, 780 A.2d 410, 431 (2001).

C.J. §§ 5–303(d) and (e) expressly reserve preexisting common law and statutory defenses and immunities of local governments and their employees, and the right of the local government to assert such defenses and immunities, as follows:

(d) Notwithstanding the provisions of [§ 5-303(b),] this subtitle does not waive any common law or statutory defense or immunity in existence as of June 30, 1987, and possessed by an employee of a local government.

(e) A local government may assert on its own behalf any common law or statutory defense or immunity in existence as of June 30, 1987, and possessed by its employee for whose tortious act or omission the claim against the local government is premised and a local government may only be held liable to the extent that a judgment could have been rendered against such an employee under this subtitle.

"With the enactment of the LGTCA, the [Maryland] Legislature sought to provide 'a remedy for those injured by local government officers and employees, acting without malice in the scope of their employment, while ensuring that the financial burden of compensation is carried by the local government ultimately responsible for the public officials' acts.'" *Rios v. Montgomery County*, 157 Md. App. 462, 475-76, 852 A.2d 1005, 1012 (2004) (quoting *Ashton v. Brown*, 339 Md. 70, 108, 660 A.2d 447, 466 (1995)), *aff'd*, 386 Md. 104, 872 A.2d 1 (2005). However, "the LGTCA does not waive governmental immunity or otherwise authorize any actions directly against local governments." *Williams v. Maynard*, 359 Md. 379, 394, 754 A.2d 379, 388 (2000). *See, e.g.*, *Pavelka v. Carter*, 996 F.2d 645, 649 (4th Cir. 1993) ("The LGTCA does not waive local governmental immunity when a local governmental entity is sued in its own capacity"); *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 378 (D. Md. 2011) (stating that, under Maryland law, "counties enjoy governmental immunity from tort liability with respect to 'nonconstitutional torts based on activity categorized as governmental.'" (cleaned up)); *Dawson v. Prince George's County*, 896 F. Supp. 537, 539 (D. Md. 1995) (stating that local government is financially responsible for a judgment against an employee, but the LGTCA "does not create liability" on the part of the municipality); *Beall v. Holloway-Johnson*, 446 Md. 48, 77, 130 A.3d 406, 423 (2016) (stating that the LGTCA does not permit a plaintiff to sue the local government directly; suit is brought against the employee); *Hansel v. City of Laurel*, 420 Md. 670, 679-80 n.5, 25 A.3d 122,

10

127 n.5 (2011) (stating that the LGTCA "does not waive the limited immunity enjoyed by local governments . . . ."). Rather, local governments are responsible for payment of any judgments. *See* C.J. § 5–303; *see also Hous. Auth. v. Bennett*, 359 Md. 356, 357-58, 754 A.2d 367, 367-68 (2000) (superseded in part by statute on other grounds).

In general, as mentioned, a municipality is "immune from common law tort suits when engaged in governmental, as opposed to proprietary, acts." *Devi*, 2017 WL 3592452, at *2; *see also DiPino*, 354 Md. at 47, 729 A.2d at 369-70 ("A local governmental entity is liable for its torts if the tortious conduct occurs while the entity is acting in a private or proprietary capacity, but, unless its immunity is legislatively waived, it is immune from liability for tortious conduct committed while the entity is acting in a governmental capacity.").[6] Here, plaintiff pleads the common law tort of negligence. And, in its regulation and maintenance of the Ocean City beach, Ocean City is engaged in a governmental act, not a proprietary one.

"[A] function is governmental where it 'is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument inuring to the municipality, and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest.'" *Anne Arundel Cty. v. Fratantuono*, 239 Md. App. 126, 136, 196 A.3d 25, 31 (2018) (quoting *Mayor and City Council of Baltimore City v. State, for Use of Blueford*, 173 Md. 267, 276, 195 A. 571, 576 (1937)). Although the Court has not identified any governmental immunity cases in Maryland specifically involving a beach, it is well established that governmental immunity applies to injuries "within the boundaries of a public park, swimming pool, or similar area where the local government's maintenance obligation is governmental in nature." *Fratantuono*, 239 Md.

---

[6] Governmental immunity does not apply to state constitutional claims. *Gray-Hopkins*, 309 F.3d at 234; *DiPino*, 354 Md. at 50-51; 729 A.2d at 371. But, none are brought here.

App. at 139, 196 A.3d at 33; *see also Algave v. Mayor & City Council of Ocean City*, 5 F. Supp. 2d 354, 356 (D. Md. 1998) ("Traditionally, the operation of recreational facilities by municipalities has been considered governmental in nature."); *Heim v. Anne Arundel Cty.*, No. 1603, 2021 WL 2105449, at *2 (Md. Ct. Spec. App. May 25, 2021) ("If an accident occurs in a park, the government is performing a governmental function and is, therefore, immune.").[7]

Logically, a public beach dedicated to recreational pursuits would fall in the same category as a public park or swimming pool. Indeed, in *Blueford*, 173 Md. at 276, 195 A. at 576, the Maryland Court of Appeals said (emphasis added):

> [I]t is better that the adequate performance of [a governmental] act be secured by public prosecution and punishment of officials who violate the duties imposed upon them in respect to it than to disburse public funds dedicated to the maintenance of such public conveniences as public parks, playgrounds, hospitals, swimming pools, and *beaches* maintained at the public expense to private persons who have suffered loss through the negligence or default of municipal employees or agents charged with their management.

And, it appears undisputed that, in its operations relating to the Ocean City beach, Ocean City acts for the public benefit, health, and welfare, without private interest or for profit.[8] As Ocean City points out, the Ocean City Code provides that the "beach reserve district," encompassing the "ocean beach," "shall remain available for the use and free passage of the public . . . ." Ocean City Code § 110-721. Indeed, plaintiff acknowledges that "Defendant is correct that the beach is open to Plaintiff and the general public for recreational purposes at no cost." ECF 16-1 at 4.

---

[7] Under the "public ways exception," governmental immunity does not apply to injuries occurring on paved public streets and sidewalks, as well as certain unpaved areas contiguous and adjacent to a public way. *Fratantuono*, 239 Md. App. at 138-39, 196 A.3d at 32-33. There is no suggestion that this exception is applicable here.

[8] That the beach generates revenue for the municipality does not transform the operation of a beach into a for-profit venture.

Moreover, Ocean City was acting in a manner sanctioned by legislative authority. "In Maryland, municipalities have express legislative authority to 'provide, maintain, and operate such community and social services for the preservation and promotion of the health, recreation, welfare and enlightenment of the inhabitants of the municipality as the legislative body may determine.'" *Algave*, 5 F. Supp. 2d at 356 (quoting Md. Code Ann., Art. 23A, § 2(b)(7)).[9]  And, the "Ocean City Charter incorporates such grant of authority '[t]o establish and maintain public parks, gardens, playgrounds and other recreational facilities . . . .'" *Algave*, 5 F. Supp. 2d at 356 (quoting Ocean City Code, § C–414(46)).

Plaintiff does not contest that Ocean City acts in a governmental capacity with regard to the beach. Rather, as noted, she argues that governmental immunity is inapplicable under C.J. § 5-303(b), because she alleges vicarious liability on the part of Ocean City for the acts of its employees.[10]

To be sure, C.J. § 5–303(b) requires Ocean City to indemnify its employees for damages resulting from their own tortious acts. But, as explained, the LGTCA does not permit plaintiff to sue Ocean City directly in a common law tort suit. *See, e.g.*, *Devi*, 2017 WL 3592452, at *2; *Paulone*, 787 F. Supp. 2d at 378; *Martino v. Bell*, 40 F. Supp. 2d 719, 722-23 (D. Md. 1999); *Dawson*, 896 F. Supp. at 539; *Williams*, 359 Md. at 394, 754 A.2d at 388. Rather, a State law tort claim must proceed against an individual employee. *See Livesay v. Baltimore County*, 384 Md. 1, 20, 862, A.2d 33, 43 (2004)

---

[9] Art. 23A, § 2(b)(7) is now codified, without substantive change, at Md. Code (2013 Repl. Vol., 2021 Supp.), § 5-210 of the Local Government Article.

[10] Although plaintiff alleges this vicarious liability generically, she does not allege any specific action by any specific employee, even an unnamed one. *See, e.g.*, ECF 7, ¶¶ 13, 15, 21, 22-24, 26.

13

Plaintiff concedes that she has not named an employee or agent of Ocean City in her suit. ECF 16-1 at 6.  But, she argues that this is because she has not yet had the opportunity, through discovery, to identify the particular employees who should be named.  *Id*.  She asserts that if the Court finds that a particular public employee should be named instead of Ocean City, then she should be given leave to amend her Complaint a second time to add a "Jane or John Doe" as a codefendant.  *Id*. at 6-7.

Federal courts have generally frowned upon "John Doe" defendants.  The Fourth Circuit has made clear that Doe suits are permissible only against "real, but unidentified, defendants." *Schiff v. Kennedy*, 691 F.2d 196, 197 (4th Cir. 1982).  A district court may dismiss an action, without prejudice, "if it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court." *Id*. at 198; *see also Massey v. Ojaniit*, 759 F.3d 343, 347 n.1 (4th Cir. 2014) (affirming district court's dismissal, without prejudice, of claims against "John and Jane Does, #1-10," where the plaintiff's allegations did not suggest that the identities of such persons could be ascertained through discovery or intervention by the court); *Pair v. Alexander*, GLR-16-1492, 2018 WL 1583472, at *1 n.2 (Apr. 2, 2018) (dismissing claims against John Doe defendants on the ground the plaintiff "d[id] not raise specific allegations against the John Doe defendants").  Rather, the "complaint must provide each John Doe defendant with fair notice of the specific facts upon which his individual liability rests." *Parker v. White*, 2012 WL 6701771, at *2 (E.D.N.C. Dec. 26, 2012) (citing *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) and *Williams v. Burgess*, 3:09-CV-115, 2010 WL 1957105, at *3 (E.D. Va. May 13, 2010)).

Moreover, courts have found that the use of a "John Doe" designation is not permissible "if the plaintiff's ignorance of the defendant's true identity is the result of willful neglect or lack

of reasonable inquiry." *Saunders v. Boddie-Noell Enters., Inc.*, 7:08-110, 2008 WL 2553047, *2 (W.D. Va. June 25, 2008) (citing 2 J. Moore et al., *Moore's Federal Practice* § 10.02(2)(d)(l) (3d ed. 2005)); *see also Williams v. 21st Mortg., Corp.*, PX-16-1210, 2017 WL 1133706, at *4 (D. Md. Mar. 27, 2017) (dismissing claims against Doe defendants because the plaintiff "had more than sufficient time to conduct a reasonable inquiry into [their] true identity").

It is unclear if plaintiff is able to amend her Complaint to add a "John Doe" defendant in a manner that satisfies these requirements. The Amended Complaint is completely vague as to any actions or omissions by Ocean City or any of its employees related to the incident. The suit alleges generically that Ocean City failed to warn against windy conditions, without specifying any facts that indicate the extent or nature of the wind conditions or that they were outside the norm for a beach. But, the Court will allow plaintiff an opportunity to amend the Complaint so as to cure the defects.

## B.   Recreational Use Statute

In Maryland, "to assert a claim in negligence, the plaintiff must prove: '(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.'" *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 212-13, 60 A.3d 1, 10 (2013) (quoting *Lloyd v. Gen'l Motors Corp.*, 397 Md. 108, 131-32, 916 A.2d 257, 270-71 (2007) (emphasis omitted).

Plaintiff alleges that Ocean City "owed a duty to Plaintiff as a member of the public using the beach for recreational purposes." ECF 7, ¶ 21. The existence of a duty, a legal obligation to a third person, is a threshold question because "'negligence is the breach of some duty that one person owes to another.'" *Jones v. State*, 425 Md. 1, 19, 38 A.3d 333, 343 (2012) (quoting *McNack*

*v. State*, 398 Md. 378, 395, 920 A.2d 1097, 1106 (2007)).  Stated another way, where there is no

duty, there is no negligence.  *See Jones*, 425 Md. at 19, 38 A.3d at 343; *see also Casper v. Charles*

*F. Smith & Son, Inc.*, 71 Md. App. 445, 454, 526 A.2d 87, 91 (1987) ("If no duty is owed, no

action can be sustained, even though injury has occurred."), *aff'd*, 316 Md. 573, 560 A.2d 1130

(1989).

Ocean City argues, however, that the Recreational Use Statute makes clear that it owed no

duty to plaintiff.  ECF 15-1 at 3-6.  "The purpose of the MRUS is to encourage landowners to

make their property available to the public for recreational or educational purposes by limiting a

landowner's liability."  *Leonard v. Exelon Generation Co.*, RDB-09-2134, 2010 WL 2773566, at

*5 (D. Md. July 13, 2010); *see* N.R. § 5-1102(a) ("The purpose of this subtitle [the MRUS] is to

encourage any owner of land to make land, water, and airspace above the land and water areas

available to the public for any recreational and educational purpose by limiting the owner's

liability toward any person who enters on land, water, and airspace above the land and water areas

for these purposes.").

N.R. § 5-1103 provides: "Except as specifically recognized by or provided in § 5-1106 of

this subtitle, an owner of land owes no duty of care to keep the premises safe for entry or use by

others for any recreational or educational purpose, or to give any warning of a dangerous condition,

use, structure, or activity on the premises to any person who enters on the land for these purposes."

N.R. § 5-1104 goes on to specify:

> Except as specifically recognized by or provided in § 5-1106 of this subtitle, an
> owner of land who either directly or indirectly invites or permits without charge
> persons to use the property for any recreational or educational purpose or to cut
> firewood for personal use does not by this action:
>
> > (1) Extend any assurance that the premises are safe for any purpose;

16

(2) Confer upon the person the legal status of an invitee or licensee to whom a duty of care is owed; or

(3) Assume responsibility for or incur liability as a result of any injury to the person or property caused by an act of omission of the person.

Thus, where the MRUS applies, it sharply limits the common law liability of a landowner to members of the general public. *See Martinez v. Ross*, 245 Md. App. 581, 587-89, 590, 227 A.3d 667, 671-72, 676-77 (2020); *Fagerhus v. Host Marriott Corp.*, 143 Md. App. 525, 536-37, 795 A.2d 221, 227-28 (2002). "Recreational purpose" is defined expansively by the statute to include "any recreational pursuit." N.R. § 5-1101(g). And, the provisions of the MRUS explicitly apply to units of local government as owners of land. N.R. § 5-1105.1(a) ("The provisions of §§ 5-1103 and 5-1104 of this subtitle are . . . [a]pplicable to a unit of local government as an owner of land.").

Ocean City contends that the MRUS applies to the Ocean City beach and eliminates any legal duty, and thus any liability, Ocean City might have to plaintiff. It asserts that "the Ocean City Beach is (and was at the relevant time) open to the general public for recreational purposes and for no charge." ECF 15-1 at 6. In making this argument, it cites the Ocean City ordinance mentioned earlier, providing that the "beach reserve district" encompassing the "ocean beach" "shall remain available for the use and free passage of the public . . . ." Ocean City Code § 110-721. Further, it notes that, as alleged, plaintiff was a member of the general public using the Ocean City beach for a recreational purpose, namely vacation. *See* ECF 7, ¶¶ 10, 21. Therefore, it argues, the MRUS applies to limit Ocean City's duty of care and liability.

The MRUS defines "owner" as "the owner of any estate or other interest in real property, whether possessory or nonpossessory, including the grantee of an easement." N.R. § 5-1101(f). In *Fagerhus*, 143 Md. App. at 543, 795 A.2d at 231-32, the Maryland Court of Special Appeals found that the term "other interest in real property" includes "nonpossessory interests that give a

17

person 'control of the premises,' even if that control is not the exclusive or primary control usually exercised by owners of a fee or leasehold estate."  Thus, for example, property managers qualify as "owners" under the MRUS, because they possess "contractual rights to exercise some control over the real property."  *Id*. at 542-43, 795 A.2d at 231.

Ocean City's argument appears to presume that Ocean City is the "owner" of the land used by plaintiff, within the meaning of the MRUS, because the MRUS applies only to an "owner of land."  *See* N.R. § 5-1103; N.R. § 5-1104; *Martinez*, 245 Md. App. at 587, 227 A.3d at 671.  But, neither the Amended Complaint nor the Motion explicitly asserts that Ocean City owns the land in question, although the Amended Complaint alleges that Ocean City is "responsible for the care of the beach."  ECF 7, ¶ 13.

In any event, plaintiff does not appear to contest that the MRUS applies as a general matter. *See, e.g.*, ECF 16-1 at 4 ("Defendant is correct that the beach is open to Plaintiff and the general public for recreational purposes at no cost.").  Instead, plaintiff's entire response is grounded in the exception to the statute's limitation of liability contained in N.R. § 5-1106.  This provision provides, in relevant part: "The provisions of this subtitle do not limit in any way any liability which otherwise exists for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity . . . ."  N.R. § 5-1106.

The Maryland Court of Special Appeals explained in *Martinez*, 245 Md. App. at 588, 287 A.3d at 671, that this phrase has a specific meaning.  At common law, the duty of care owed by a property owner to a person injured on that property depends on whether the injured person is classified as an invitee; as a licensee by invitation or social guest; or as a trespasser or bare licensee. "'At the bottom rung are trespassers and bare licensees, to whom is owed no more than to abstain

from willful or wanton misconduct or entrapment.'" *Id.* (quoting *Macias v. Summit Mgmt., Inc.*, 243 Md. App. 294, 317, 220 A.3d 363, 376 (2019)).

The duty preserved by the exception in N.R. § 5-1106, according to the Maryland Court of Special Appeals, is equivalent to the duty owed to trespassers and bare licensees.  "[U]nder sections 5-1103 and 5-1106, if an owner allows 'others' to come onto the land for recreational or educational purposes and does not charge a fee, the owner has the lowest duty in the law of owners and occupiers -- the duty owed to 'trespassers and bare licensees, ... to abstain from willful or wanton misconduct or entrapment.'" *Martinez*, 245 Md. App. at 588, 287 A.3d at 671 (quoting *Macias*, 243 Md. App. at 317, 220 A.3d at 376).

In the context of the duty owed to trespassers, "[w]illful misconduct is performed with the actor's actual knowledge or with what the law deems the equivalent to actual knowledge of the peril to be apprehended, coupled with a conscious failure to avert injury."  *Wells v. Polland*, 120 Md. App. 699, 719, 708 A.2d 34, 44 (1999); *see also Doehring v. Wagner*, 80 Md. App. 237, 246, 562 A.2d 762, 767 (1989).  And, "a wanton act is one performed with reckless indifference to its potential injurious consequences."  *Wells*, 120 Md. App. at 719, 708 A.2d at 44.  "The term 'wanton' generally denotes 'conduct that is extremely dangerous and outrageous, in reckless disregard for the rights of others.'"  *Id.* (quoting *Mech v. Hearst Corp.*, 64 Md. App. 422, 428-29, 496 A.2d 1099, 1102 (1985)).

Maryland case law consistently emphasizes the high bar for finding a violation of this duty towards trespassers.  "A land owner does not have a duty to make the land safe for trespassers or to warn trespassers of any potential dangers that may lie therein."  *Wells,* 120 Md. App. at 721, 708 A.2d at 45; *see also Walsh v. Avalon Aviation, Inc.*, 118 F. Supp. 2d 675, 679 (D. Md. 2000) ("Because the trespasser/licensee takes the property as she finds it, the landowner has no duty to

keep the property in a safe condition, to anticipate the plaintiff's presence, or to warn her of dangerous conditions.").

"[A] review of Maryland case law reveals that liability for injury to trespassers is imposed only in those cases in which the land owner has engaged in conduct calculated to or reasonably expected to lead to injury of the trespasser." *Wells*, 120 Md. App. at 721, 708 A.2d at 45.  In *Wells*, the Maryland Court of Special Appeals reviewed a number of cases in which, according to the court, it was foreseeable that trespassers would be injured by a condition located on the property; there was actual knowledge that trespassers were routinely used the property; the danger was affirmatively created by the landowner; and the danger could have been averted without much effort or expense.  *Id*. at 721-24, 708 A.2d at 45-47 (collecting cases).  "Yet, in none of the cases did the land owner's conduct meet the wanton or willful standard."  *Id*. at 724, 708 A.2d at 47.

Plaintiff argues that she has adequately alleged "willful or malicious failure" under N.R. § 5-1106.  In particular, she points to her allegations that Ocean City had actual knowledge that a hazardous or dangerous condition existed involving the open and unattended umbrellas during a wind advisory; that Ocean City knew beachgoers were present during this condition; and that Ocean City willfully and consciously failed to guard, warn, remedy, or take precautions regarding this condition.  ECF 16-1 at 4-5; *see* ECF 7, ¶¶ 22-24.  Ocean City characterizes these allegations as bald and conclusory assertions that simply parrot the relevant legal elements, untethered to any supporting facts.  ECF 15-1 at 8-10.  Plaintiff responds that it has levied sufficient factual allegations to survive a motion to dismiss, pending discovery.  ECF 16-1 at 5.

In light of the minimal duty owed by Ocean City to plaintiff, the dearth of factual allegations in the suit, such as the nature and extent of the wind advisory and wind speed at the

relevant time, and the other conclusory allegations, plaintiff has failed to state a claim sufficient to satisfy N.R. § 5-1106.

Many of plaintiff's allegations amount to "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  For example, paragraph 22 alleges that Ocean City breached its duty by "willfully failing to guard and/or warn against those dangerous conditions, uses and/or activities as set forth below." ECF 7, ¶ 22.  Paragraph 24(f) alleges that Ocean City "[w]illfully fail[ed] to warn of the dangerous condition, and allow[ed] it to exist in reckless disregard of the safety of Plaintiff," and paragraph 24(g) charges that Ocean City "[w]illfully fail[ed] to act in conscious disregard of Plaintiff's rights and safety." *Id*. ¶ 24(f), (g).

Other portions of Count I allege actions by Ocean City that plainly do not constitute breaches of its duty of care under the case law.  Paragraph 24 repeatedly alleges that Ocean City knew of a hazardous condition involving the umbrellas, knew individuals such as plaintiff would be present in such a condition, and failed to warn them or take action to remedy the condition.  *Id*. ¶ 24.  But, as noted, "[a] land owner does not have a duty to make the land safe for trespassers or to warn trespassers of any potential dangers that may lie therein." *Wells*, 120 Md. App. at 721, 708 A.2d at 45.  Likewise, actual knowledge that trespassers are on the property does not trigger a duty or liability, nor does foreseeability that the trespassers would be injured by a condition on the property.  *Id*. at 721-24, 708 A.2d at 45-47.  Plaintiff also alleges that Ocean City "fail[ed] to inspect the beach while a wind advisory was in effect." ECF 7, ¶ 24(e).  But, the duty to inspect a property is one owed to invitees, the category of persons due the highest level of protection, and not to social guests or trespassers. *Macias*, 243 Md. App. at 322, 220 A.3d at 379.

In an attempt to meet the standard in N.R. § 5-1106, plaintiff has liberally sprinkled Count I of her Amended Complaint with phrases like "willful" and "conscious." Indeed, the word "willful" or "willfully" appears eleven times in the seven paragraphs that comprise Count I. *See* ECF 7, ¶¶ 20-27. I agree with Ocean City that, in this context, these allegations are bare assertions that do not satisfy the Rule 8 plausibility standard. The Amended Complaint includes no factual allegations that, if true, would amount to willfulness or conscious disregard of the dangerous conditions in question.

Plaintiff correctly notes (ECF 16-1 at 5) that Fed. R. Civ. P. 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." But, the Fourth Circuit has made clear that alleging such mental conditions must still satisfy the Rule 8 plausibility standard.

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369 (4th Cir. 2012), is particularly instructive. In *Mayfield*, the plaintiff alleged, among other claims, defamation. Because the plaintiff was a public figure, he was required to allege "that the defamatory statement [by defendants] was made with 'actual malice'; that is, 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Id*. at 377 (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)). The Court remarked: "Rule 9(b) ensures there is no heightened pleading standard for malice, but malice must still be alleged in accordance with Rule 8—a 'plausible' claim for relief must be articulated." *Mayfield*, 674 F.3d at 377.

Applying the Rule 8 standard, the Court concluded that the plaintiff's allegation, to the effect that the statements in question "'were known by [defendants] to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity,'" was "entirely insufficient." *Id*. at 378. The Court reasoned, *id*.: "This kind of conclusory allegation—

a mere recitation of the legal standard—is precisely the sort of allegations that *Twombly* and *Iqbal* rejected."   Further, the Court determined that plaintiff's actual factual allegations did not adequately allege malice.  *Id.*  As in *Mayfield*, plaintiff's allegations as to willfulness are essentially recitations of the legal terms contained in N.R. § 5-1106, without supporting facts.

Plaintiff argues that it is inappropriate to ask more of her in alleging willful misconduct at the pleading stage, before she has had the benefit of discovery.  But, as noted, even at the pleading stage, the Federal Rules demand more than bald accusations or speculation.  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille*, 716 F.3d at 350.  Mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis*, 588 F.3d at 193 (citation omitted).  In this context, plaintiff's request for discovery is an argument that she "'should be allowed to find out if [she] has a claim, rather than that [she] has a claim for which [she] needs . . . discovery.'" *McKinnon v. Blank*, DKC-12-1265, 2013 WL 781617, at *11 (D. Md. Feb. 28, 2013) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)) (ellipsis in *McKinnon*; brackets mine).

In sum, plaintiff does not allege facts sufficient to state a claim that Ocean City breached its duty of care, as limited by the MRUS.  And, plaintiff's bald and conclusory assertions as to Ocean City's willful misconduct do not alter this conclusion.  Therefore, even if plaintiff were permitted to amend her Complaint so as to address the issue of governmental immunity, this would not allow the Complaint to survive a motion to dismiss.

## V.  Conclusion

For the reasons stated above, I shall grant the Motion and dismiss Count I of the Amended Complaint, as to Ocean City.

As noted, Ocean City seeks dismissal with prejudice.  *See* ECF 15 at 1.  However, I shall grant plaintiff leave to amend the Complaint, due within 21 days of the docketing of this Memorandum Opinion and accompanying Order, to address the issues discussed above.  In particular, although plaintiff may not sue Ocean City directly, plaintiff may name an individual Ocean City defendant(s), or a "John Doe" defendant(s), satisfying the relevant criteria.  And, plaintiff must adequately allege conduct by the defendant(s) within the ambit of N.R. § 5-1106.

If plaintiff does not file an Amended Complaint within 21 days of the docketing of this Memorandum Opinion and accompanying Order, I shall dismiss Count I, with prejudice.

An Order follows, consistent with this Memorandum Opinion.

Date:   January 13, 2022                                   _____/s/_____
                                                          Ellen L. Hollander
                                                          United States District Judge